Keith **SHANK, Baird Cook, and Marvin, Utsinger, Petitioners,**

v.

**The UNITED STATES DEPARTMENT OF the INTERIOR, OFFICE OF SURFACE MINING, Bruce Babbitt, in his capacity as Secretary of the United States Department of the Interior, Robert Armstrong, in his capacity as Assis-**

tant Secretary of the United States Department of the Interior, and Robert Uram, in his capacity as Director of the United States Department of the Interior, Office of Surface Mining, Respondents.

No. 95–1422.

United States District Court, C.D. Illinois.

Nov. 7, 1995.

James P. Baker, Springfield, Illinois, for petitioners.

Elizabeth L. Collins, U.S. Attorney, Springfield, Illinois, for respondents.

### ORDER

MIHM, Chief Judge.

At the Preliminary Injunction Hearing on November 1, 1995, the Court found that it was without subject matter jurisdiction to hear the matter. Therefore, Petitioners' Motion for a Preliminary Injunction is DENIED.

Originally this case, as 95–3308, was before Judge Mills in Springfield. Judge Mills recused himself, and it came before Chief Judge Mihm, as 95–1422.

## BACKGROUND

On October 30, 1995, Petitioners filed a Complaint and a Motion for Preliminary Injunction for the Court to enjoin Respondents from terminating them. On October 31, 1995, Respondents filed a Response to Motion for Preliminary Injunction arguing that Petitioners had not met the requirements to receive injunctive relief. On October 31, Petitioners filed a Supplemental Response on the Continuing Resolution.

Petitioners are federal employees at the Office of Surface Mining and Reclamation Enforcement (OSM) of the Department of the Interior (DOI) in the Springfield, Illinois, office. By March 13, 1995, DOI was sufficiently certain that budget cuts would be deep and instituted a hiring freeze. On June 21, 1995, DOI notified all employees of its apparent impending budget cuts. DOI began preparing for a reduction in force (RIF) in accordance with U.S. Office of Personnel Management guidelines which advise that when employees are terminated early, more money is saved and fewer employees must be terminated. On July 21, 1995, OSM responded to employees' suggestions on and alternatives to the RIF by stating that necessary spending cuts were impossible without a RIF.

On July 18, 1995, the House of Representatives passed an appropriations bill which would reduce OSM's FY 1996 budget by $23.4 million from FY 1995 and by $23.2 million from the President's request. (Kay Affidavit, ¶ 6, citing H.R. 1977, 104th Cong., 1st Sess. (1995).) On August 9, 1995, the Senate passed its own amended version of the House appropriations bill; the Senate would reduce OSM's FY 1996 budget by $26.6 million from FY 1995 and by $26.4 off the President's request. (Kay Affidavit, ¶ 7, citing H.R. 1977, 104th Cong., 1st Sess. (1995).) Of OSM's $292 million budget, $90

million is *not* allocated *by Congress* to the states and is available for operating OSM itself. (Kay Affidavit, ¶ 8.) The proposed budget cuts were in the operating budget, with oversight functions in primacy states targeted.[1] (Kay Affidavit, ¶ 8.) Illinois is a primacy state. (Kay Affidavit, ¶ 4.)

On August 22, 1995, OSM issued to all employees a memorandum and status report discussing the budget crisis. On August 30, 1995, 265 of OSM's 920 employees, including Petitioners, were notified that they would be terminated effective November 1, 1995 due to a RIF. The Springfield, Illinois, office, which conducts oversight functions, would close. On September 15, 1995, OSM assured its employees of its concern over the damage done to OSM and to them on account of the RIF.

On September 18, 1995, the House and Senate Conference Members agreed to reduce OSM's budget by $22.9 million off the President's FY 1996 request. (Kay Affidavit, ¶ 9, citing what appears to be an internal document: "Office of Surface Mining Reclamation and Enforcement, Fiscal Year 1996 Appropriation History" ("Appropriation History").) Compared to FY 1995, the Conference figures represent a cut of $6.9 million from Federal Regulatory Programs and of $2.0 million from Federal Reclamation Program Operations—the largest cuts. (Kay Affidavit, ¶ 9, citing Appropriation History.) These accounts fund OSM activity in primacy states like Illinois, thus funding Petitioners' salaries. (Kay Affidavit, ¶ 9.)

On September 28, 1995, House Joint Resolution 108, "Making continuing appropriations for the fiscal year 1996, and for other purposes," came into effect. H.R.J.Res. 108, 104th Cong., 1st Sess. (1995) ("HJRES"). Section 115 which states that:

Notwithstanding any other provision of this joint resolution, except 106, the rates for operation for any continuing project or activity provided by section 101 that have not been increased by the provisions of section 111 or section 112 shall be reduced

---

1. OSM enforces the Surface Mining Control and Reclamation Act of 1979 either by directly regulating surface mining activity in "federal pro-

gram states" or by overseeing states' own surface mining programs in "primacy states". (Kay Affidavit, ¶ 3.)

by 5 percent but shall not be reduced below the minimal level defined in section 111 or below the level that would result in a furlough.

HJRES, § 115. Section 106 discusses the availability of special funds made available through HJRES 108. Section 101 lists the appropriations acts, including the DOI's, that it covers. Section 111 resolves that projects and activities are funded to continue at a minimal level. Section 112 provides that funding is increased to prevent furloughs. HJRES, §§ 101, 106, 111, 112. To summarize, the budgets of projects and activities not specifically increased (in order to continue operating at a minimal level and to prevent furloughs) are reduced by 5% but not below levels necessary to continue functioning and to prevent furloughs. HJRES, §§ 101, 106, 111, 112, 115.

## JURISDICTION

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.... Nothing herein ... confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

Administrative Procedures Act (APA), 5 U.S.C. § 702. "This chapter [Judicial Review] applies, according to the provisions thereof, except to the extent that ... agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2).

█ The APA embodies a "basic presumption of judicial review" subject to agency discretion. (Internal quotation marks omitted.) *Lincoln v. Vigil*, 508 U.S. 182, ——, 113 S.Ct. 2024, 2030, 124 L.Ed.2d 101 (1993). Agency discretion may be circumscribed by statute; only where the agency's decision making power is not circumscribed is a decision not reviewable under § 701(a)(2). *Id.*, at ——, 113 S.Ct. at 2031. The present case focuses on a Resolution, not a statute.

Petitioners concede that but for HJRES 108 they would have no basis to sue. Petitioners do not argue that Congress ever imposed restrictions on DOI which would prevent their termination. Petitioners argue that HJRES 108, § 115 makes their termination invalid because it is intended to maintain the status quo—preventing their termination. Petitioners acknowledge that they may be terminated under the 1996 budget when it is issued. Petitioners do not contend, therefore, that the decision to implement the RIF was not "committed to agency discretion." Additionally, Petitioners claim that no statute precludes them from judicial relief because the Merit Systems Protection Board (MSPB) can review only implementation of the RIF—not whether OSM had the authority to issue a RIF in light of HJRES 108.

Respondents counter that Petitioners are not properly before the Court because the Civil Service Reform Act bars judicial review of agency personnel actions under the APA, that the decision to terminate Petitioners was planned for and made before HJRES 108, that there had been no express waiver of sovereign immunity, that a RIF is a matter of agency discretion, that HJRES 108 covers furloughs and not RIFs, and that Petitioners have other relief available such as the Federal Back Pay Act and the MSPB's process.

As Petitioners concede, under § 701(a)(2) OSM had discretion to terminate Petitioners in August when it did so. The issue is whether the August decision was blocked by HJRES 108.

█ The Court finds that HJRES 108 does not affect prior agency decisions to terminate employees in accordance with a long-planned RIF. At the Preliminary Injunction hearing, the Court explained that HJRES 108's § 115 refers to furloughs, with no mention of RIFs. In addition, OPM's Bulletin No. 96–01 and Attachment refer only to furloughs. Because "furlough" is not defined in HJRES 108, the word is given its common, everyday definition. "A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979); *United States v. Bell,* 936 F.2d 337, 342 (7th Cir.1991). A furlough is a leave

of absence; a RIF results in permanent job terminations. Here, OSM had no intention of Petitioners returning to work under the FY 1996 budget.

■ There is no dispute that OSM had discretion to implement a RIF in August covering the FY 1996 budget. Nothing in HJRES 108 circumscribed that discretion. Therefore, the decision to implement the RIF is not reviewable under the APA. Consequently, the Court does not have jurisdiction over Petitioners' Motion for Preliminary Injunction. The Motion for Preliminary Injunction is DENIED.